# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALEN TROLINGER, | |
| Plaintiff | CIVIL ACTION NO. 3:14-CV-01324 |
| v. | (MEHALCHICK, M.J.) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant | |

## MEMORANDUM OPINION

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. §405(g), seeking judicial review of a partially favorable decision of the Commissioner of Social Security ("Commissioner") awarding Plaintiff Galen Trolinger Disability Insurance Benefits ("DIB") under Title II of the Social Security Act beginning July 27, 2011 – rather than on Plaintiff's alleged onset date of November 21, 2008. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 26; Doc. 27).

For the reasons stated herein, we conclude that the final decision of the Commissioner was made in accordance with the law and applicable regulations, and is supported by substantial evidence. As such, we will **AFFIRM** the final decision of the Commissioner, and **DENY** Plaintiff's request for the award of benefits or remand for a new administrative hearing.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On January 26, 2009, Plaintiff protectively filed a Title II application for DIB alleging that he became unable to engage in his past work, or any other work, on November 21, 2008, due to diabetes, sciatica, neuropathy, and a heart condition. (Admin. Tr. 223; Doc. 11-6 p. 6).

In addition to the impairments alleged, the ALJ also evaluated the medically determinable impairments of hypothyroidism, hypertension, hyperlipidemia, arthritis, depression, and gastrointestinal reflux disease ("GERD"). (Admin. Tr. 22; Doc. 11-2 p. 23).

Plaintiff was fifty-four years old on the date of his first administrative hearing. He has a high school education, and is a certified electrician. (Admin. Tr. 500; Doc. 29 p. 8). Plaintiff last worked as a tire loader. He was laid off in November 2008 when his employer closed the plant where he worked. (Admin. Tr. 518; Doc. 29 p. 26). His position as a tire loader required him to be on his feet all day. (Admin. Tr. 44; Doc. 11-2 p. 45). He was required to constantly lift and carry objects weighing between thirty and a couple hundred pounds. (Admin. Tr. 47; Doc. 11-2 p. 48); (Admin. Tr. 520; Doc. 29 p. 28).

Plaintiff testified that he has severe neuropathy in both of his feet, which radiates up both of his legs. (Admin. Tr. 503; Doc. 29 p. 11). He reported that he cannot stand or walk for longer than ten minutes. (Admin. Tr. 512; Doc. 29 p. 20). His pain is alleviated with he sits with both feet elevated, (Admin. Tr. 503; Doc. 29 p. 11), but during a typical day he is constantly changing positions to alleviate pain. (Admin. Tr. 514; Doc. 29 p. 22). He also takes Lyrica twice per day. He testified that his medication does help with his pain, but does not significantly improve his ability to walk or stand. (Admin. Tr. 503; Doc. 29 p. 11). Despite his difficulty walking and standing, Plaintiff does not use an assistive device, motorized vehicle, or wheelchair to ambulate. *Id.*

Plaintiff testified that he lives in an efficiency apartment attached to his brother's home. He has to walk up ten steps to reach his apartment, but testified that walking up stairs does not bother him any more than walking on a flat surface. (Admin. Tr. 504, 513; Doc. 29 p. 12, 21). Cold temperatures cause his legs to stiffen up, and his pain disturbs his sleep. (Admin. Tr. 509;

Doc. 29 p. 17). On the date of his hearing, Plaintiff was able to drive thirty minutes without stopping. (Admin. Tr. 508-09; Doc. 29 p. 16-17).

He testified that his neuropathy has intensified since he completed his adult function report in March 2009, and that he is no longer able to do certain activities. For example, in 2009 he was able to drive his girlfriend to work, care for a small dog, shop for groceries, and mow the lawn using a riding mower. (Admin. Tr. 242-51; Doc. 11-6 pp. 25-34.). As of August 2010, he reported that he no longer had a girlfriend or dog, no longer shopped for his own groceries, and no longer mowed the lawn. (Admin. Tr. 504, 506-07; Doc. 29 p. 12, 14-15). Although medical records reflect that he injured himself moving furniture, Plaintiff reported that he actually injured his shin by walking into a piece of furniture. (Admin. Tr. 515; Doc. 29 p. 23). He also reported that he attempted to exercise by walking on his brother's treadmill in April 2010, but could not do it because of the pain. *Id.*

Plaintiff reported that he was first diagnosed with peripheral neuropathy in 2005. (Admin. Tr. 334; Doc. 11-7 p. 45). During examinations in November 2007, June 2008, and December 2008, Dr. Carey noted that Plaintiff exhibited symptoms of peripheral neuropathy. (Admin. Tr. 295-98; Doc. 11-7 pp. 6-9). Treatment records from the Sadler Health Center, where Plaintiff was treated by Dr. Hieb reflect a diagnosis of severe peripheral neuropathy dating back to December 2008, when he first established care at that facility. (Admin. Tr. 330-31; Doc. 11-7 p. 41-42). Treatment records also reflect that Plaintiff's diabetes was poorly controlled. He was informed that he may need basal insulin in February 2009. In September 2009, Plaintiff reported that he could not sleep due to pain in his legs.

With respect to Plaintiff's heart impairment, the record reflects that treating source Dr. Philip Carey recommended that Plaintiff undergo a dual isotope stress test in 2007. On June 18,

2007, the electrocardiographic portion of a dual isotope stress test was negative for ischemia, and revealed no definite angina. (Admin. Tr. 292; Doc. 11-7 p. 3). Plaintiff's left ventricular function was normal. *Id.* There was, however, evidence of reversibility on the nuclear scans, consistent with ischemia. *Id.* In November 2007, Dr. Carey noted that Plaintiff was negative for chest pain and shortness of breath, but referred him to cardiologist Dr. Emad Iskandar based on the results of the stress test. (Admin. Tr. 297; Doc. 11-7 p. 9). During examinations in November 2007, June 2008, Dr. Carey noted that Plaintiff denied chest pain, syncope, and shortness of breath. (Admin. Tr. 295-98; Doc. 11-7 pp. 6-9).

On December 31, 2007, Plaintiff presented to Dr. Iskandar for evaluation of mild sternal chest pain in light of his abnormal stress test. (Admin. Tr. 299; Doc. 11-7 p. 10). Dr. Iskandar recommended that Plaintiff undergo cardiac catheterization as the next step in Plaintiff's cardiac workup and asked Plaintiff to begin an aspirin regimen. (Admin. Tr. 301; Doc. 11-7 p. 12). Dr. Iskandar also noted that Plaintiff's hypertension was adequately controlled with medication, and that his hyperlipidemia was maintained by medication. *Id.* Treatment notes also reflect that Plaintiff wanted to wait to have the recommended cardiac catheterization due to financial constraints. *Id.* Plaintiff never had the cardiac catheterization procedure, (Admin. Tr. 295; Doc. 11-7 p. 6), and did not return to Dr. Iskandar for further treatment until February 2010, when Plaintiff presented with complaints of twice weekly episodes of sharp midsternal chest pain. (Admin. Tr. 384-85; Doc. 11-7 pp. 95-96). Dr. Iskandar recommended a non-exercise nuclear stress test to assess ischemia, and noted that Plaintiff's hypertension and hyperlipidemia were adequately controlled by medication. *Id.*

Treatment records from the Sadler Health Center, where Plaintiff was treated by Dr. Hieb, reflect that Plaintiff was positive for chest pain in December 2008, and was diagnosed

with coronary artery disease in February 2009. (Admin. Tr. 323; Doc. 11-7 p. 34). In August 2010, a pharmacologic stress test was negative for ischemia, but was considered mildly abnormal due to small fixed apical and basal inferior defects – which appeared to be reversible on the prior study. Plaintiff's left ventricular ejection fraction was considered normal. (Admin. Tr. 435; Doc. 11-8 p. 50); (Admin. Tr. 50; Doc. 11-2 p. 51).

Plaintiff was diagnosed with hypothyroidism in May 2012. (Admin. Tr. 456; Doc. 11-8 p. 71). He refused to begin treatment with Synthroid in April 2012 despite elevated levels of TSH in his blood work. (Admin. Tr. 458; Doc. 11-8 p. 73).

With respect to his alleged impairment due to depression, treatment record reflect that Plaintiff reported feeling depressed in December 2008, and again in April 2009. (Admin. Tr. 295, 376; Doc. 11-7 p. 6, 88). Plaintiff was prescribed Zoloft. (Admin. Tr. 375; Doc. 11-7 p. 86). Plaintiff continued to report feelings of depression and anxiety throughout the relevant period, but was reported to be doing well psychiatrically.

In addition to treatment notes, the record in this case also includes medical opinions by treating, nontreating, and nonexamining medical sources.

On May 5, 2009, Plaintiff was examined by nontreating source, Dr. Ronald Vandegriff for a disability evaluation. (Admin. Tr. 334-42; Doc. 11-7 pp. 45-53). Plaintiff reported that he was diagnosed with peripheral neuropathy secondary to diabetes mellitus in 2003. *Id.* Dr. Vandegriff reported the impression of diabetes mellitus (type 1), hypothyroidism, hyperlipidemia, and neuropathy (bilateral, feet). *Id.* On examination, Dr. Vandegriff noted that Plaintiff's range of motion was within normal limits in all joints. *Id.* He opined that Plaintiff retained the physical capacity to: frequently lift up to twenty pounds; frequently carry up to ten pounds, and occasionally carry up to twenty pounds; stand or walk up to two hours per eight-

hour day; sit without restriction; push or pull without limitation; frequently bend and kneel; occasionally stoop and crouch; never balance or climb; and reach, handle, finger, feel, see, hear, speak, taste, and smell without restriction. *Id.* Dr. Vandegriff also assessed that Plaintiff should avoid exposure to heights and moving machinery. *Id.*

On June 18, 2009, nonexamining psychologist Dr. Karen Weitzner completed a psychiatric review technique form. (Admin. Tr. 343-55; Doc. 11-7 pp. 54-66). Dr. Weitzner assessed that Plaintiff had no medically determinable mental impairment. *Id.* In so doing, she explained that although Plaintiff reported treatment for depressive symptoms in the past, there is was no medical evidence in the record at that time indicating that Plaintiff was receiving any current mental health treatment. *Id.*

On June 25, 2009, nonexamining general practitioner Dr. Vrajlal Popat completed a physical RFC assessment of Plaintiff's abilities. (Admin. Tr. 356-63; Doc. 11-7 pp. 67-74). Dr. Popat noted the diagnoses of diabetes, thyroid disease, arthritis, and bilateral neuropathy in the lower extremities. *Id.* He assessed that Plaintiff could: occasionally lift or carry up to fifty pounds and frequently lift or carry up to twenty-five pounds; stand or walk up to six hours per eight-hour workday; sit up to six hours per eight-hour workday; push or pull with his upper and lower extremities without restriction; frequently climb, balance, and stoop; and occasionally kneel, crouch, and crawl. *Id.* Dr. Popat also noted that Plaintiff had no established manipulative, visual, communicative or environmental limitations. *Id.* In support of his assessment, Dr. Popat explained that the totality of the evidence did not support the lifting, carrying, standing, or walking limitations noted by Dr. Vandegriff or Plaintiff's claims, and does not contain the type of significant clinical or laboratory abnormalities to support a finding of disability. *Id.*

On July 17, 2010, treating source Dr. Hieb completed a medical source statement about Plaintiff's ability to do physical work-related activities. (Admin. Tr. 430-33; Doc. 11-8 pp. 45-48). In his check-box assessment, Dr. Hieb opined that Plaintiff could: lift or carry objects weighing less than ten pounds on an occasional or frequent basis; stand or walk less than two hours per eight-hour workday; sit without restriction; push or pull objects without restriction; never climb, balance, kneel, or crouch; occasionally crawl, stoop, and engage in handling or fingering. *Id.* Dr. Hieb also noted that Plaintiff had visual disturbances that affected his ability to see, and should avoid work environments where he would be exposed to vibration, humidity, and hazards due to occasional vertigo. *Id.* On August 26, 2010, Dr. Hieb authored a letter in which opined that the degree of limitation he described in his July 17, 2010 medical source statement was present as of Plaintiff's November 2008 alleged onset date. (Admin. Tr. 450; Doc. 11-8 p. 65).

On August 20, 2010, treating source, Dr. Carey, authored a two-sentence letter in which he opined that in 2007 – prior to Plaintiff's alleged onset date – Plaintiff was limited to sedentary work. (Admin. Tr. 449; Doc. 11-8 p. 64).

The procedural history of this case is complex. Plaintiff's application for benefits was initially denied on July 7, 2009. Following this denial, Plaintiff requested an administrative hearing. On August 19, 2010, Plaintiff, with the assistance of counsel, appeared and testified before Administrative Law Judge ("ALJ") Daniel Myers in Harrisburg, Pennsylvania. Impartial vocational expert ("VE") Harold Vincent Kulman also appeared and testified during the hearing. On August 24, 2010, the ALJ issued a partially favorable decision in which Plaintiff was awarded benefits beginning April 2, 2010. Plaintiff appealed the ALJ's first partially favorable decision to the Appeals Council. Finding that the ALJ's decision contained several

inconsistencies and lacked sufficient explanation, the Appeals Council granted Plaintiff's request for review and remanded this matter for a new administrative hearing.

On November 7, 2012, a second administrative hearing was held before ALJ Myers. Once again Plaintiff appeared and testified with the assistance of counsel. At the second hearing, a second VE, Sheryl Bustin, appeared and testified. On November 23, 2012, the ALJ issued a second, and less favorable, partially favorable decision, this time awarding benefits beginning July 27, 2011. Plaintiff appealed the ALJ's second partially favorable decision to the Appeals Council, who denied review.

Thereafter, Plaintiff initiated this action by filing a Complaint on July 10, 2014, in which he alleges that the second and final decision of the Commissioner is not in accordance with the law and applicable regulations, and is not supported by substantial evidence; Plaintiff requests that this Court award benefits beginning on November 21, 2008, in the alternative, or remand this matter for a third administrative hearing. (Doc. 1). On October 10, 2014, the Commissioner filed her Answer, in which she asserts that the second and final decision of the Commissioner is correct, in accordance with the law and applicable regulations, and is supported by substantial evidence. (Doc. 10). Together with her Answer, the Commissioner filed a copy of the administrative record, which she later supplemented to include a copy of the transcript from Plaintiff's first administrative hearing. (Doc. 11; Doc. 29). Having been fully briefed by the parties, this matter is now ripe for resolution. (Doc. 16; Doc. 21; Doc. 23).

## II.    DISCUSSION

### A.  STANDARD OF REVIEW

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators – the ALJ and this court. At the outset, it is the

responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits.

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §405(g); *see also* 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §405(g); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this framework, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520. Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations

- 9 -

omitted); *see also* 20 C.F.R. §404.1545. In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545.

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. §423(d)(5); 20 C.F.R. §404.1512; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); *Mason*, 994 F.2d at 1064.

Once a final decision is issued by the Commissioner, and that decision is appealed to this Court, our review of the Commissioner's final decision is limited to determining whether the findings of the final decision maker – the ALJ in this case – are supported by substantial evidence in the record, as it was developed before that decision maker. *See* 42 U.S.C. § 405(g)(sentence five); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.  THE ALJ'S PARTIALLY FAVORABLE DECISION CONCLUDING THAT PLAINTIFF WAS DISABLED BEGINNING ON JULY 27, 2011 – THE DATE PLAINTIFF ATTAINED AGE 55

In the Commissioner's final decision dated November 23, 2012, the ALJ determined that Plaintiff met the insured status requirements of Title II of the Social Security Act though December 31, 2013. (Admin. Tr. 21; Doc. 11-2 p. 22). The ALJ then proceeded through each step of the five-step sequential evaluation process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any point between his alleged onset date of November 21, 2008, and the date of the ALJ's decision, November 23, 2012. *Id.* At step two, the ALJ found that, as of November 21, 2008, Plaintiff had the medically determinable severe impairments of diabetes mellitus, coronary artery disease, hypothyroidism, hypertension,

- 11 -

hyperlipidemia, arthritis, sciatica, peripheral neuropathy, and depression. (Admin. Tr. 22; Doc. 11-2 p. 23). The ALJ also noted that Plaintiff had the medically determinable but nonsevere impairment of GERD, and that Plaintiff's history of occasional alcohol use and reference to past marijuana use were not medically determinable severe impairments. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 at any point during the relevant period. (Admin. Tr. 22-23; Doc. 11-2 pp. 23-24).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. In so doing, the ALJ was required to consider all of Plaintiff's symptoms to the extent that they could be found credible under the mandates of 20 C.F.R. §404.1529 and SSRs 96-4p and 96-7p. As part of his credibility determination, the ALJ was also required to consider and weigh the opinion evidence of record in accordance with the mandates of 20 C.F.R. §404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-03p. Based on his consideration of all of the relevant evidence of record, the ALJ found that between November 21, 2008, and November 23, 2012, Plaintiff retained the ability to perform light work, as defined in 20 C.F.R. §404.1567(b) except that:

> the claimant must be allowed to alternate between sitting and standing every 2 hours; must avoid hazards, such as unprotected heights and machinery moving about the jobsite floor; when sitting, must be allowed to elevate his legs; attention and concentration reduced to 90% of the workday; no balancing or climbing; occasional stooping and crouching; and frequent bending and kneeling.

(Admin. Tr. 23; Doc. 11-2 p. 24).

The ALJ then advanced to steps four and five of the sequential evaluation process. To support his findings at these steps, the ALJ called upon the services of VE Sheryl Bustin.

At step four, the ALJ concluded that Plaintiff was unable to engage in his past relevant work as a shift electrician or tire loader. The ALJ's findings at step four were based on his consideration of the above RFC assessment, together with VE Bustin's testimony that an individual with the RFC outlined above could not engage in Plaintiff's past relevant work. (Admin. Tr. 51; Doc. 11-2 p. 52). As such, the ALJ found that Plaintiff had been unable to engage in his past relevant work since November 21, 2008. (Admin. Tr. 27; Doc. 11-2 p. 28).

As discussed above, at step five, the ALJ must determine whether the claimant can engage in any "other work." The ALJ does so using a multi-step process. First the ALJ considers a claimant's RFC, age, education, and work experience in conjunction with the medical-vocational guidelines ("grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2.[1] In this case, the ALJ's evaluation of these factors is complicated by the fact that one of these variables – Plaintiff's age – shifted during the relevant period. On his alleged onset date, Plaintiff was fifty-two years old, thus was an individual "closely approaching advanced age." On July 27,

---

[1] In 1978, to improve both the uniformity and efficiency of the evaluation of applications for disability benefits under the Social Security Act the Secretary promulgated the grids through administrative rulemaking. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). The grids establish the types and number of jobs that exist in the national economy for claimants with exertional limitations. *Id.* The grids consist of a matrix of four factors – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. *Id.* Where a claimant's qualifications correspond to the job requirements identified by a particular grid rule, that rule directs a conclusion as to whether Plaintiff can perform "other work." *Id.* The applicability of these rules, however, is limited. As is often the case, if a claimant's capabilities are not described accurately by a grid rule (where the claimant has any nonexertional impairment, or has an exertional impairment that is not adequately addressed by a grid rule), the ALJ must engage in a more individualized determination at step five which often involves consulting a vocational resource, such as a VE. *See* SSR 83-12, 1983 WL 31253; SSR 83-14, 1983 WL 31254; SSR 85-15, 1985 WL 56857.

2011, however, the ALJ accurately noted that Plaintiff attained the age of fifty-five, and therefore transitioned into the regulatory category of "advanced age."[2] *Id.* In the context of evaluating whether a claimant is "disabled" under the Social Security Act, advancing age is considered to be an increasingly limiting factor in a claimant's ability to adjust to "other work." 20 C.F.R. §404.1563. Consistent with 20 C.F.R. §404.1563, the grids operate on the premise that, at a certain point, a claimant's age significantly restricts his or her ability to adopt and adjust to a new job in a new working environment. Thus, as a claimant grows older, he or she is more likely to be found disabled, even though his or her physical strength remains the same.

Applying the medical-vocational grid rules of 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that Rule 202.06 directed a finding of "disabled" based entirely on Plaintiff's exertional impairments once he attained "advanced age" on July 27, 2011. (Admin. Tr. 28; Doc. 11-2 p. 29). However, prior to that date, Rule 202.14 of the medical-vocational guidelines directed a finding of "not disabled" based solely on Plaintiff's exertional impairments. (Admin. Tr. 27; Doc. 11-2 p. 28). As such, the ALJ found that Plaintiff was disabled as of July 27, 2011, but concluded that Plaintiff was "not disabled" prior to that date based on an individualized determination of the extent to which Plaintiff's additional limitations eroded his occupational base under Rule 202.14.

---

[2] The age of a claimant who is of "advanced age" is generally considered to significantly affect his or her ability to adjust to other work, while the age of a claimant who is "closely approaching advanced age" is viewed to have a serious impact on the ability to adjust to other work when the claimant also has limited work experience. 20 C.F.R. §404.1563.

- 14 -

In this case, Plaintiff disputes the ALJ's decision only to the extent that the ALJ found that he was not disabled between November 21, 2008, and July 26, 2011. Plaintiff contends that he should have been found disabled pursuant to Rule 201.14 of 20 C.F.R. Part 404, Subpart P, Appendix 2 as of his alleged onset date.

The ALJ's determination that Plaintiff was not disabled between November 21, 2008, and July 26, 2011, was based on his consideration of the above RFC assessment and the additional vocational factors (age, education, and past relevant work experience), considered together with testimony by VE Bustin that an English-speaking individual who is closely approaching advanced age and has the above RFC had the requisite functional capacity to work as a cashier (DOT # 211.462-010), bakery worker (DOT #524.687-022), or machine tender (DOT #569.686-046). (Admin. Tr. 52; Doc. 11-2 p. 53). The VE's testimony also establishes that, collectively, jobs within these occupations existed in approximately 650,000 positions in the national economy, 34,000 positions in the state economy, and 500 positions in the local economy; the VE also noted that these numbers reflect a reduction in the number of positions due to the sit/stand option included in the RFC. *Id.* Because the VE's testimony revealed that Plaintiff could engage in "other work" that exists in significant numbers in the national economy the ALJ concluded that Plaintiff was "not disabled" prior to July 27, 2011.

- 15 -

C. The ALJ's Assessment of the Medical Opinions By Treating Sources Doctor Hieb and Dr. Carey is in accordance with the law and applicable regulations and is supported by substantial evidence

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered. At the outset, we note that the Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating; examining; and non-examining.[3] The Social Security Regulations also express a clear preference for opinions by treating sources. *See Morales*, 225 F.3d at 317 ("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time."). Pursuant to 20 C.F.R. §404.1527(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

*Id.*; *see also* SSR 96-2p, 1996 WL 374188. Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *1. In many cases, a treating source's medical opinion will be

---

[3] A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ongoing treatment relationship with the claimant. 20 C.F.R. §404.1502. A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner. *Id.* A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor. *Id.*

entitled to great deference even where it is found to be non-controlling. *Id*. Notwithstanding the regulatory preference for treating source opinions, no rule or regulation prohibits an ALJ from relying on medical opinions by examining or nonexamining state agency physicians and psychological consultants to the extent that their opinions are consistent with the other substantial evidence of record.

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c). In addition, the ALJ should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention. 20 C.F.R. §404.1527(c)(6).

As discussed above, the record in this case contains opinions by two treating sources – Dr. Hieb and Dr. Carey. The ALJ accorded "little" weight to both of these treating source opinions. The ALJ explained that:

> Contrary to the undersigned's previous finding on August 24, 2010, and upon further reflection and consideration of the entire record, little weight is afforded to the opinion of Louis Hieb, M.D., that the claimant was capable of performing a range of sedentary work since the onset date. While this opinion was rendered by a treating source, Dr. Hieb provides no clinical findings to support his opinions and it appears that his opinion relied heavily on the claimant's subjective allegations. For instance, the claimant reported having tremors at one appointment, but there is no evidence of ongoing problems such that he would have manipulative limitations. Dr. Hieb provides that the claimant can only lift up to 10 pounds. The record documents that the claimant was able to do yard work, perform household cleaning, go grocery shopping and even lift furniture. This directly contradicts Dr. Hieb's suggestion that the claimant is only limited to sedentary work. Similarly, little weight is afforded to the opinion of Philip

> Carey, M.D., in August 2010, that the claimant's peripheral neuropathy limited
> him to sedentary work since 2007. This opinion contains no supporting clinical
> evidence or specific functional assessment of the claimant's abilities.

(Admin. Tr. 26; Doc. 11-2 p. 28).[4] Plaintiff contends that in discounting these opinions, the

ALJ relied solely on Plaintiff's activities of daily living. (Doc. 16 p. 13; Doc. 23 pp. 2-3). He

also asserts that, if the ALJ had properly weighed this evidence, Plaintiff would have been

limited to sedentary work and would have been found disabled as of his alleged onset date

under Rule 201.14 of 20 C.F.R. Part 404, Subpart P Appendix 2. In response, the

Commissioner asserts that the ALJ appropriately accorded little weight to the treating source

opinions. (Doc. 21 p. 16).

With respect to Plaintiff's first contention, that the ALJ cannot discount a treating

source opinion where it is contradicted by nonmedical evidence, we disagree. SSR 96-2p

provides that "[d]epending on the facts of a given case, any kind of medical or nonmedical

evidence can potentially satisfy the substantial evidence test." 1996 WL 374188 at *4. The

Ruling goes on to state that where "a treating medical source's opinion on what an individual

can still do despite his or her impairment(s) will not be entitled to controlling weight if

---

[4] Plaintiff also notes that the ALJ accorded greater weight to Dr. Hieb's opinion in his prior decision. (Doc. 23 p. 6). Plaintiff contends that the ALJ was required to explain why his review of the same medical evidence and testimony resulted in a different, less favorable, decision on remand. We find that this argument lacks merit. The ALJ's second decision included the consideration of new medical evidence and testimony from a second hearing, thus was not based upon an identical record. Further, the ALJ's failure to reconcile his decision to credit the limitations in Dr. Hieb's medical source statement with several clinical findings that were inconsistent with this opinion was one of the bases for remand cited by the Appeals Council. (Admin. Tr. 77; Doc. 11-3 p. 20). In remedying this error, the ALJ engaged in a more complete consideration of the record, and reasonably reached a different result.

substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinions." *Id.* Similarly, when according non-controlling weight to a treating source opinion, the ALJ is required to consider the opinion's consistency with the record as a whole – which includes evidence about a claimant's daily activities. *See* 20 C.F.R. §404.1527.

Furthermore, the inconsistency between Dr. Hieb's assessment and Plaintiff's activities of daily living is not the only rationale cited by the ALJ in explanation for his decision to discount Dr. Hieb's assessment. The ALJ also relies on the lack of substantiation for the extreme limitations in Dr. Hieb's treatment notes, and the fact that Dr. Hieb appears to impose several limitations based solely on Plaintiff's subjective complaints, which were also properly discounted by the ALJ. *See Morris v. Barnhart*, 78 Fed. App'x. 820, 825 (3d Cir. 2003)("An ALJ may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted.")(*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)). The Court similarly finds that the ALJ cited a proper basis to discount Dr. Carey's opinion – which did not include any functional limitations or identify any objective findings in support of the doctor's assessment. Moreover, Dr. Carey opined that Plaintiff was unable to work as of 2007, yet the record reflects that Plaintiff continued to engage in his physically demanding job as a tire loader until November 2008.

The Court finds that the ALJ's consideration of the treating source opinions of record is in accordance with the law and regulations, and is supported by substantial evidence.

### D. The ALJ's Assessment that Plaintiff's Testimony was not Entirely Credible is Supported by Substantial Evidence

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9(E.D. Pa. Mar. 7, 2000)(*quoting Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531(6th Cir. 1997)). Furthermore, in making a finding about the credibility of a claimant's statements, the ALJ need not totally accept or totally reject the individual's statements. SSR 96-7p, 1996 WL 374186. The ALJ may find all, some, or none of the claimant's allegations to be credible, or may find a claimant's statements about the extent of his or her functional limitations to be credible but not to the degree alleged. *Id.*

Notwithstanding the degree of deference to which an ALJ's credibility determinations are entitled, the ALJ's assessment of a claimant's credibility is governed by certain well-established principles. The ALJ must consider "all of the available evidence," including the claimant's medical history, signs and laboratory findings, the claimant's statements, and any opinions offered by medical and nonmedical sources, when assessing the intensity and persistence of a claimant's symptoms. 20 C.F.R. §404.1529(c)(1).   The Social Security Administration has also recognized that sometimes an individual's symptoms suggest a greater level of severity than can be shown by objective medical evidence alone. SSR 96-7p, 1997 WL 374186 at *3. As such, the Social Security Administration has developed a list of factors that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of a claimant's statements about his or her symptoms, including: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the type, dosage,

effectiveness, and side effects of any medications; treatment, other than medication; any measures other than treatment that the individual uses to relieve his or her symptoms; and any other factors concerning the claimant's limitations and restrictions. See 20 C.F.R. §404.1529(c)(3).

The Social Security regulations, and the Dictionary of Occupational Titles, classify jobs based on their physical exertion requirements using the following categories: sedentary, light, medium, heavy, and very heavy. 20 C.F.R. §404.1567. Plaintiff contends that his testimony on the issue of his inability to stand or walk for long periods described no more than sedentary work, and was fully consistent with the medical evidence of record.[5] (Doc. 16 p. 16). He asserts

---

[5] Plaintiff only asserts that his inability to stand for prolonged period prevents him from engaging in light work. He does not suggest that is unable to lift twenty pounds, or that he would be unable to lift ten pounds on an occasional basis. To the extent that Plaintiff does allege that his testimony reflects that he was unable to engage in a limited range of light work, the Court notes that Plaintiff did not describe the maximum amount of weight he could lift, though was able to constantly lift thirty pounds immediately prior to his alleged onset date. Further, Plaintiff testified that he was able to lift with his hands, and lift his arms over his head. (Admin. Tr. 509; Doc. 29 p. 17). Plaintiff's testimony on this issue is not, by itself, conclusive on the issue of whether Plaintiff is limited to sedentary or light work. Although there are differing medical opinions on this issue in the record, at least one medical source credited by the ALJ opined that Plaintiff could lift up to twenty pounds.

Additionally, as part of his argument that the ALJ improperly discounted his credibility, Plaintiff relies on a function report completed by his mother, Jean Rickard. The ALJ explained that he found Ms. Rickard's report to be unpersuasive because the medical record did not document the degree of severity alleged, and because the report was internally inconsistent. Specifically, the ALJ noted that "[w]hile Ms. Rickard suggested that the claimant was unable to perform lifting or any kind, she also indicating that he [sic] capable of doing household chores, cleaning and cooking." (Admin. Tr. 27; Doc. 11-2 p. 28). Plaintiff suggests that the ALJ improperly discounted the adult function report completed by his mother, Jean Rickard because "she had a biased interest in him obtaining disability benefits." (Doc. 16 p. 16). There is no evidence in the ALJ's decision that Ms. Rickard's opinion was rejected due to a perceived bias,

*(footnote continued on next page)*

that the ALJ erred by limiting him to light work, with a sit/stand option, rather than sedentary work. The Court finds his arguments to be unavailing.

Sedentary work is generally performed in a seated position, and requires no more than "occasional" (no more than two hours per workday) walking or standing; which means that Plaintiff would be required to sit for approximately six hours per day. *See* 20 C.F.R. §404.1567(a); SSR 83-10, 1983 WL 32151 at *5. The primary difference between sedentary and light work is that light work involves a good deal of standing or walking. SSR 83-10, 1983 WL 32151 at *5. Relatively few unskilled light jobs are performed in a seated position, however, a job is considered "light" when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, and requires greater exertion than sedentary work. *Id.*

Plaintiff testified that he could sit no more than fifteen minutes at one time before elevating his feet. (Admin. Tr. 508-09; Doc. 29 pp. 16-17). He later admitted that he was able to drive thirty minutes to his hearing, but testified that the trip caused him a great deal of discomfort. *Id.* He testified that he could stand up to ten minutes before sitting down, and that farther he walked the more pain he felt. (Admin. Tr. 511-12; Doc. 29 pp. 19-20). He also reported that his neuropathy did not affect his ability to operate the gas and brake pedals in his car. (Admin. Tr. 507; Doc. 29 p. 15). Plaintiff testified that during the day he is constantly changing positions and moving around to alleviate the pain in his legs. (Admin. Tr. 513-514; Doc. 29 p. 21-22). Because Plaintiff's testimony reveals that he is unable to sit for six hours per

as such the Court finds that Plaintiff's assertion that the ALJ improperly rejected Ms. Rickard's opinion due to bias is meritless.

day, the Court finds that Plaintiff is incorrect in asserting that his testimony is consistent with the definition of sedentary work. *See* SSR 83-12, 1983 WL 31253 at *4 ("In some disability claims, the medical facts lead to an assessment of an RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing … Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work … or the prolonged standing or walking contemplated for most light work."). Moreover, the ALJ credited Plaintiff's testimony concerning his residual capacity to sit, stand and walk to some extent when he included a sit/stand option in his RFC assessment. In his decision, the ALJ explained that:

> The medical consultant opined that the claimant was capable of standing, walking and sitting for six hours in an 8-hour workday. This opinion is supported by the record, which shows that the claimant's physical impairments did not prevent him from performing daily task[sic] – even those requiring exertion – such as grocery shopping, performing household chores, doing yard work and moving furniture. The claimant had normal ranges of motion at the consultative examination, and there was no evidence of severe pathology on MRI. However, the undersigned has included a sit/stand option in consideration of the claimant's complaints of stiffness in the record.

(Admin. Tr. 25; Doc. 11-2 p. 27).

Based on the above, the Court finds that the ALJ's assessment of Plaintiff's testimony with respect to his residual capacity to sit, stand, and walk is in accordance with 20 C.F.R. §404.1529 and SSR 96-7p, and is supported by substantial evidence.

Finally, because the Court finds that the ALJ's decision that Plaintiff could engage in a limited range of light work with a sit/stand option is supported by substantial evidence, the Court finds that Plaintiff's assertion that the ALJ failed to consider job transferability lacks merit. Plaintiff's assertion that the issue of transferable skills is decisive in this case prior to July 27, 2011, is premised upon the underlying assumption that he is limited to sedentary, rather

than light, work. The Court has already found, however, that the ALJ's determination that Plaintiff retained the ability to engage in a limited range of light work with s sit/stand option is supported by the record. The corresponding grid rules for "light" work, Rules 202.14 and 202.15, both direct a finding of "not disabled." *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 §§202.15, 202.14. Therefore, there is no possibility that further consideration of this issue would warrant a different result in this case.

III.   **CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

1.   The Clerk of Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff Galen Trolinger as set forth in the following paragraph.

2.   The partially favorable decision of the Commissioner of Social Security is **AFFIRMED**.

3.   Plaintiff's request for the award of benefits or a new administrative hearing is **DENIED**.

4.   The Clerk of Court shall close this case.

Dated: July 27, 2015

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

- 24 -